UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MYERS, | ) | No. EDCV 10-144-CW |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of supplemental security income benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

## I. BACKGROUND

Plaintiff Michael Myers was born on February 17, 1965, and was 42-years old at the time of his administrative hearing. [Administrative Record ("AR") 17, 61.] He has a high school education and past relevant work experience as an automobile detailer. [AR 17.]

He alleges disability on the basis of blindness in his left eye, anxiety, and shoulder and back problems that stem from a 2002 work-related injury. [AR 64-5, 141.]

## II. **PROCEEDINGS IN THIS COURT**

Plaintiff's complaint was lodged on January 22, 2010, and filed on January 29, 2010. On July 7, 2010, defendant filed an answer and plaintiff's Administrative Record ("AR"). On August 23, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. **PRIOR ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for Social Security Income ("SSI") benefits on March 29, 2007, alleging disability since May 2, 2002. [AR 61-62.]

After the application was denied initially and upon reconsideration, plaintiff requested an administrative hearing, which was held on January 28, 2009, before Administrative Law Judge ("ALJ") Jay E. Levine. [AR 35-59.] Plaintiff appeared with counsel, and testimony was taken from both plaintiff, [AR 38-58], and vocational expert ("VE") Troy Scott, [AR 58-59]. The ALJ denied benefits in an administrative decision filed on May 29, 2009. [AR 9-18.] When the Appeals Council denied review on December 11, 2009, the ALJ's decision became the Commissioner's final decision. [AR 1-2.] This action followed.

## IV. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of

legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

3

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a *prima facie* case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to

4

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 416.920.

**B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found plaintiff had not engaged in substantial gainful activity from his application date, March 29, 2007 (step one); that he had the "severe" impairments of: blindness in his left eye, left shoulder impingement, and degenerative disc disease (step two); and that he did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 11-13.] The ALJ found that plaintiff had the RFC to perform "light" work[2] with the following additional limitations:

> [N]o work on dangerous machinery; no work at unprotected heights; no work that requires binocular vision; occasional overhead lifting; occasional climbing, stooping, balancing, kneeling or crouching; and no crawling.

(Step four) [AR 13.] The ALJ found that this RFC would preclude

---

work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

[2] "Light" work is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." See 20 C.F.R. § 416.967

plaintiff's past relevant work. [AR 17.]

The ALJ concluded that, based on plaintiff's RFC, age, education and work experience, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (step five). [AR 17.] Accordingly, plaintiff was found not "not disabled" as defined by the Social Security Act (the "Act"). [AR 18.]

**C.    ISSUES IN DISPUTE**

The Joint Stipulation identifies five disputed issues, whether:

1.   The ALJ properly addressed the medical evidence of record;
2.   The ALJ properly found plaintiff's mental impairment was non-severe;
3.   The RFC finding was supported by substantial evidence;
4.   The ALJ properly developed the record regarding plaintiff's mental limitations; and
5.   The ALJ properly assessed plaintiff's credibility regarding his mental impairments

[JS 4.]

In order to track the sequence of the disability evaluation, the court will address issue two first.

**D.    ISSUE TWO: SEVERITY OF ALLEGED MENTAL IMPAIRMENT**

Plaintiff contends the ALJ erred at step two of the sequential evaluation by failing to find his alleged mental impairments to be "severe."

A "severe" impairment is one which significantly limits the plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 416.921(b); Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987).

A plaintiff is not required to establish total disability at this step of the evaluation, however. Rather, the severe impairment requirement is a threshold element a plaintiff must prove in order to establish disability within the meaning of the Act. Id. at 146. Indeed, it is a "de minimus screening device" that is used to "dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find that a plaintiff's impairment is non-severe only when that conclusion is "clearly established by medical evidence." Webb v. Barnhart, 433 F.3d 683, 687(9th Cir. 2005) (citing Social Security Ruling 85-28). Thus, applying the normal standard of review to the requirements of step two, the court must consider whether substantial evidence clearly supported a conclusion that the plaintiff *did not* have a medically severe impairment or combination of impairments. Id. See also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)("Despite the deference usually accorded to the Secretary's application of the regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here").

When, however, the ALJ finds an impairment to be non-severe but then properly considers the evidence and any limitations allegedly caused by that impairment at a subsequent stage of the sequential analysis, any error in finding the impairment non-severe is harmless. See Lewis v. Astrue, 498 F.3d 909 (9th Cir. 2007) (any error in finding plaintiff's bursitis to be non-severe was harmless where ALJ considered whether any limitations were caused by the bursitis at Step 4 of the sequential evaluation).

Accordingly, any error here is harmless because when he assessed plaintiff's RFC the ALJ reviewed the medical evidence relating to plaintiff's mental impairment and found that plaintiff did not have

any mental functioning limitations.

**E. ISSUES ONE, THREE, AND FOUR: ALLEGED MENTAL IMPAIRMENTS**

Plaintiff does not challenge the ALJ's assessment of the evidence relating to his physical impairments. The crux of issues one, three, and four is whether the ALJ should have contacted plaintiff's mental health treatment facility to seek a mental RFC assessment, or whether the evaluation of the clinical evidence in that regard is legally sufficient.

With respect to mental functioning, plaintiff alleges that he has had depression, and an anxiety/panic disorder dating back to his teens. [AR 97, 123-24, 132.] Plaintiff alleges these impairments interrupt his sleep, cause him not to want to be around people or in close areas, and result in panic attacks of increasing frequency. He testified to having one or two brief (one- to three-minute) panic attacks on approximately five days each week. He further testified that as a result of these attacks he must either go outside or use a rescue inhaler. [AR 44, 132.]

The clinical evidence relating to plaintiff's mental impairments is as follows.

He was treated primarily at the San Bernardino County Department of Behavioral Health. At his intake evaluation with the San Bernardino County Department of Behavior Health on April 9, 2007, plaintiff was assessed using the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, Fourth Edition, ("DSM IV"). The DSM IV provides for a "multiaxial" method of assessment in which each of five "axes" refers to a different domain of information. Axis V of this method provides for the expression of a "Global Assessment of Functioning," ("GAF"), on a numerical point scale of zero to 100, with 100 being the

8

highest level of functioning, and zero the lowest.  At his intake, plaintiff was assessed with a GAF score of 48, and at his first follow-up on April 25, 2007, he was assessed with a GAF score of 50. [AR 212, 216-21.]  A GAF score between 41 and 50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." <u>Diagnostic and Statistical Manual of Mental Disorders</u> p. 32 (4th ed. 1994 (DSM-IV)) (emphasis in original removed). The treatment records do not include a follow-up multiaxial assessment.

Plaintiff's mental impairments are treated exclusively with medication. [AR 207, 210-212, 214-27, 263, 269, 271-76, 295-304.]

In May 2007, consultative examining psychiatrist Jason Yang, M.D., examined plaintiff and reviewed two unspecified 2005 physician treatment reports. [AR 233-34.]  Based upon his examination and review, Dr. Yang assessed plaintiff with a GAF score of 60.  A GAF score between 51 and 60 indicates: "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  <u>Id.</u> (emphasis in original removed).

Dr. Yang found that, notwithstanding any mental impairment, plaintiff has no functional limitations.  He found no evidence of cognitive deficit, perceptual disturbances, or delusional disorders. He concluded plaintiff is able to care for himself and his funds, remains able to focus attention adequately, follow one- to two-part instructions, remember and complete both simple and complex tasks, tolerate stress in the work environment, maintain regular attendance,

work without supervision, and interact appropriately with supervisors, co-workers and the public. [AR 236.]

Relevant to plaintiff's mental impairments, in July 2007 and based upon a review of Dr. Yang's report and plaintiff's self-reporting to the social security administration, state agency reviewing physician A. R. Schrift, M.D., similarly found that plaintiff had no limitations in activities of daily living, maintaining social functioning, or in maintaining concentration, persistence or pace. [AR 256-57.]

In October 2007, based upon a review of plaintiff's April through July 2007 treatment records at the San Bernardino Behavioral Center, plaintiff's self-reporting to the social security administration, and Dr. Schrift's and Dr. Yang's reports, state agency reviewer Bruce G. Harlow confirmed Dr. Schrift's assessment of plaintiff's mental functioning. [AR 261.]

The ALJ is required to consider all medical opinion evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). He can meet his burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)).

The ALJ met this standard. The ALJ adopted Dr. Yang's and Dr. Schrift's opinions regarding plaintiff's mental RFC for three specific and legitimate reasons. First, because the consultative examiner and state agency physician are familiar with the Social Security Rules and Regulations and legal standards and, thus, in a position to provide a clear analysis of plaintiff's impairments and limitations. Second, because their findings are "well-supported" by the medical evidence.

Third, because the opinions are not inconsistent with the other substantial evidence of record. [AR 16-17.]

Plaintiff contends, however, that the ALJ committed reversible error on the basis that Dr. Yang and Dr. Schrift did not consider the treatment notes from the San Bernardino County Department of Mental Health in arriving at their opinions. Plaintiff urges, therefore, that the ALJ should contact the treating source for a mental RFC assessment. Plaintiff's contentions are unpersuasive.

In accord with the ALJ's conclusion that the adopted reports were not inconsistent with and were well-supported by the evidence of record not specifically addressed, a state agency review conducted after Dr. Schrift's examined four months of treatment records from the San Bernardino facility. This subsequent review specifically found those treatment records were consistent with Dr. Schrift's findings. Thus, the ALJ adequately weighed the record and did not have a duty to contact the treatment facility. The duty to develop the record would be triggered only if this evidence were ambiguous or the record inadequate for proper evaluation, neither of which was the case here. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not have a duty to re-contact plaintiff's treating physicians where the ALJ found, with support in the record, that the evidence was adequate to make a disability determination).

There is no material legal error with respect to issues one, three, and four.

**F.    ISSUE FIVE: CREDIBILITY ASSESSMENT**

Plaintiff next contends the credibility assessment was in error with respect to plaintiff's allegations of mental impairment because, first, the ALJ did not account for the treatment records discussed

11

above and, second, he did not specifically discount plaintiff's mental functioning allegations.

As discussed in the preceding section, however, the ALJ did not err in adopting the findings of doctors Yang and Schrift. Thus, to the extent plaintiff contends the crediblity assessment is flawed in this regard, the court disagrees.

Moreover, in conducting the credibility evaluation, an ALJ is not required, as plaintiff suggests, to detail his reasons for rejecting each discrete allegation made by a plaintiff. (See JS 30.) When, as here, the ALJ finds the plaintiff to be "unbelievable in general," the credibility finding is legally sufficient. E.g., Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ offered multiple, legally sufficient reasons for finding plaintiff not to be believable overall, and, notably, plaintiff does not challenge those findings. The ALJ found, for example, that the record "strongly suggest[s]" plaintiff "exaggerated symptoms and limitations." [AR 15.] He noted numerous inconsistencies between plaintiff's allegations and the clinical evidence. [Id.] Additionally, he found that plaintiff's work history, which shows plaintiff worked only two to three of the past 15 years, "raises a question as to whether [his] continuing unemployment is actually due to medical impairments." [Id.] This finding alone is a proper reason to find the plaintiff lacks credibility overall. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (evidence that a plaintiff has a "poor work history" and "has shown little propensity to work" can negatively impact credibility regarding inability to do so).

Accordingly, the crediblity evaluation is supported by substantial evidence and free from material legal error.

12

**VI. ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: May 25, 2011



CARLA M. WOEHRLE
United States Magistrate Judge